IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


------------------------------------------------------ :
LORILLARD TOBACCO COMPANY        : CASE NO.  5:10 CV 01893
                                 :
                     Plaintiff,  :
                                 :
         -vs-                    : MEMORANDUM OF OPINION AND
                                 : ORDER GRANTING PLAINTIFF'S
                                 : MOTION FOR SUMMARY JUDGMENT
AHMAD'S PIZZA, INC. d/b/a EMPRESS : IN PART AND DENYING IN PART
MARKET                          :
                                 :
                    Defendant.   :
------------------------------------------------------


UNITED STATES DISTRICT JUDGE LESLEY WELLS

       This case arises out of the sale of allegedly counterfeit Newport cigarettes at the

defendant's store, Empress Market.  On 25 August 2010, Lorillard Tobacco Company,

the manufacturer of Newport cigarettes, filed a complaint in this Court.  (Doc.1).  The

complaint alleges that the defendant's activities constituted infringement of Lorillard's

federally registered trademarks under 15 U.S.C. Section 1114(1), false designations of

origin and false descriptions or representations under 15 U.S.C. Section 1125(a),

trademark dilution under 15 U.S.C. Section 1125(c), unfair competition and trademark

infringement under common law, and a violation of the Ohio Deceptive Trade Practices

Act.  On 16 June 2011, the plaintiff moved for summary judgment on the above claims

as to liability and damages, and further requested that the Court enter a permanent

injunction and award attorneys fees.  (Doc. 26).  The defendant filed a response, and

1

the plaintiff replied.  (Doc. 28, 29).

Plaintiff's motion for summary judgment will be granted in part and denied in part. Specifically, this Court will grant summary judgment on the plaintiff's state and federal trademark infringement claims, false designations of origin and trademark dilution claims, and Ohio Deceptive Trade Practices Act claim.  This Court will deny summary judgment on the plaintiff's state law unfair competition claim and request for enhanced statutory damages, attorney's fees, and a permanent injunction.  Finally, the Court will determine that the defendant is liable to Lorillard for $8,000 in statutory damages pursuant to 15 U.S.C. Section 1117(c).


**Factual Background**

 "Lorillard's leading brand, Newport®, is the best selling menthol brand in the United States and the second best selling cigarette brand overall."  (Doc. 26).  Lorillard manufactures these cigarettes in North Carolina and then distributes them throughout the country through a network of wholesalers and retailers. (Doc. 26).

The defendant, Empress Market, is a convenience store doing business since January of 2008 at  518 East Exchange Street, Akron, Ohio 44304.  Lorillard's Newport® cigarettes are the top selling menthol brand of cigarette at the store.  The defendant purchases its Newports® as well as all other cigarettes from ADCO Distributors, Inc., an authorized wholesale tobacco distributor.

On 4 August 2010, Lorillard sales representative Dale Hutton visited Empress Market and observed approximately one carton and fifty loose packs of suspected counterfeit Newport® brand cigarettes located within the market's cigarette inventory.

2

(Decl. Hutton at ¶4).  Unbeknownst to the defendant, Mr. Hutton removed five packs of these suspected counterfeits from the defendant's inventory and delivered them to Lorillard for further inspection.  Id.  Edward O'Brien, Manager of Sales Planning for Lorillard, received these packs of suspected counterfeits and utilized his specialized knowledge and experience to determine that they were, indeed, counterfeit.  (Decl. O'Brien at ¶4-11).  Justifying his conclusion, Mr. O'Brien stated:

> The clarity of the printing on genuine packages of NEWPORT® brand cigarettes is not as sharp as that found on a counterfeit package . . . Lorillard's tear tape has no elasticity while the cigarette packs obtained from Empress Market in connection with this case have tear tapes that will stretch to nearly twice their original length . . . With regard to cigarettes obtained from Empress Market, the product code appearing on the bottom of the pack was "OC07N114" and time stamp was "19:09."  This code has been found on previous samples that have been confirmed counterfeit NEWPORT cigarettes . . . I am certain that the cigarettes I inspected, which had Lorillard trademarks on the packages, were not genuine, but were counterfeit product.  (Decl. O'Brien at ¶4-11).

Upon determining that the five packs were, indeed, counterfeit, Lorillard contacted the Ohio Department of Taxation ("ODT").  The ODT proceeded to conduct a seizure operation at Empress Market, but found no counterfeit cigarettes.

**A. Standard of Review**

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 322 (1986).  The moving party:

> always bears the initial responsibility of informing the
> district court of the basis for its motion, and identifying
> those portions of the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the
> affidavits, if any, which it believes demonstrate the
> absence of a genuine issue of material fact.

<u>Id</u>. at 323; <u>see</u> <u>also</u> <u>Boretti v. Wiscomb</u>, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party

has the "burden of showing that the pleadings, depositions, answers to interrogatories,

admissions and affidavits in the record, construed favorably to the nonmoving party, do

not raise a genuine issue of material fact for trial") (quoting <u>Gutierrez v. Lynch</u>, 826 F.2d

1534, 1536 (6th Cir.1987)).  The burden then shifts to the nonmoving party who "must set

forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty

Lobby, Inc</u>., 477 U.S. 242, 250 (1986) (quoting Fed.R.Civ.P. 56(e)).  Thus, "[o]nce the

moving party has met its initial burden, the nonmoving party must present evidence that

creates a genuine issue of material fact making it necessary to resolve the difference at

trial." <u>Talley v. Bravo Pitino Restaurant, Ltd.</u>, 61 F.3d 1241, 1245 (6th Cir.1995).  Read

together, <u>Liberty Lobby</u> and <u>Celotex</u> stand for the proposition that a party may move for

summary judgment by demonstrating that the opposing party will not be able to produce

sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant

to Fed.R.Civ.P. 50.  <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1478 (6th Cir.1989).

 Once the burden of production has shifted, the party opposing summary judgment

cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient

to "simply show that there is some metaphysical doubt as to the material facts."

4

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also

Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994)

(marking as standard that the plaintiff must present "more than a scintilla of evidence in

support of his position; the evidence must be such that a jury could reasonably find for the

plaintiff").  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified]

pleadings" and present some type of evidentiary material in support of its position.

Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56©.  Summary

judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of

either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).


**B. Lorillard's Claims**

*I. Infringement of Federally Registered Trademarks Under 15 U.S.C. Section 1114(1).*

The Lanham Act applies to federally registered trademarks and imposes liability

upon any person who shall, without the consent of the registrant:

> [u]se in commerce any reproduction, counterfeit, copy, or colorable
> imitation of a registered mark in connection with the sale, offering for
> sale, distribution, or advertising of any goods or services on or in
> connection with which such use is likely to cause confusion, or to
> cause mistake, or to deceive.  15 U.S.C. Section 1141(1)(a).

A violation of this section is established by proving (1) ownership and continuous use of a

specific trademark; (2) secondary meaning if the mark is descriptive; and (3) a likelihood

5

of confusion among customers resulting from a defendant's use of the mark. Homeowners Group, Inc. v. Home Marketing Specialists, 931 F.2d 1100, 1105 (6th Cir. 1991).  This section does not require the plaintiff, or trademark holder, to prove that the defendant intended to infringe.  Sellers bear strict liability for violations of the Lanham Act. Lorillard Tobacco Company v. Amouri's Grand Foods, Inc., 453 F.3d 377 (6th Cir. 2006).

In the present case, the defendant violated Section 1141(1) of the Lanham act. First, it is undisputed that Lorillard is the owner of protectable trademarks and has continuously used these trademarks since at least 1956.  (Decl. Lindsley at ¶4; Doc. 26, Exh. A-H ).  Second, the secondary meaning factor does not apply in the present case because Lorillard's marks are all registered with the United States Patent and Trademark Office.  (Doc. 26, Exh. A-H).  Third, the defendant's use of Lorillard's trademarks is likely to cause confusion concerning the origin of the cigarettes in question.  The Court will briefly examine the latter issue below.

The Sixth Circuit examines eight factors in order to determine the likelihood of consumer confusion in a trademark infringement case.  Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d 462, 468 (6th Cir. 1982).  These factors must be considered together and the analysis is not mathematical; rather the ultimate question is "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way."  Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center, 109 F.3d 275, 287 (6th Cir. 1997).  In the present case,  the eight factor analysis strongly supports the plaintiff's position.[1]  Most notably, as evidenced

---

[1]Lorillard persuasively argues that there is almost a certainty of confusion regarding the origin of the cigarettes offered for sale.  Indeed, Lorillard's trademarks are well known marks

by photographic exhibits, the non-genuine product appears identical to genuine Newports®. (Doc. 26, Exh. 5,6). Therefore, this Court finds that consumers would believe that the cigarettes in question were affiliated with Lorillard and its protected marks.

Lorillard has shown both its ownership and continuous use of specific trademarks and a likelihood of confusion among customers resulting from the defendant's use of the marks. Therefore, this Court finds that the defendant is liable for infringement of Lorillard's federally registered trademark.

*II. Unfair Competition, False Designations of Origin, and False Descriptions or Representations Claim under 15 U.S.C. Section 1125(a).*

Turning to the question of whether the defendant's actions amounted to the use of a false designation of origin or false description or representation of goods in commerce, in violation of 15 U.S.C. Section 1125(a), this Court concludes that the defendant did violate that section of the Lanham Act.

The statute provides in relevant part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or

---

and have been used continuously since the 1950's, the non-genuine cigarettes appear identical to genuine product, the trademarks used on the counterfeit and genuine product are similar, and the marketing channels used by the plaintiff and defendant are similar. Homeowners Group, Inc. v. Home Marketing Specialists, 931 F.2d 1100, 1107 (6th Cir. 1991); Wynn Oil Co. v. Thomas, 839 F.2d 1183, 1188 (6th Cir. 1988).

as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]  15 U.S.C. Section 1125(a).

To establish a claim under the above section, a plaintiff must demonstrate that (1) the false designation has a substantial economic effect on interstate commerce; and (2) the false designation creates a likelihood of confusion.  Johnson v. Jones, 149 F.3d 494, 502 (6th Cir. 1998).  In order to show that the false designation has a substantial economic effect on interstate commerce, the plaintiff must establish that the defendant's false designation hinders Lorillard's ability to conduct its interstate business.  Id.

In the present case, the defendant's use of counterfeit Lorillard marks has a substantial economic effect on interstate commerce because the defendant is directly competing with Lorillard by selling and/or offering for sale cigarettes purporting to be authentic Newport trademark sign brand cigarettes.  Further, and as this Court has already established, the defendant's false designation creates a likelihood of confusion. Therefore, there are no genuine issues of material fact that the defendant is liable for false designation of origin under 15 U.S.C. Section 1125(a).


*III. Dilution Claim under 15 U.S.C. Section 1125(c).*

Section 43(c) of the Lanham Act prohibits the "dilution" of famous marks, regardless of the presence or absence of actual or likely confusion, regardless of whether there is a competition between the senior and junior user's marks, and regardless of actual economic injury.  15 U.S.C. Section 1125(c).  Under this section, there are two types of dilution: dilution by blurring and dilution by tarnishment.

8

**A. Dilution by blurring**

In determining whether a mark or trade name is likely to cause dilution by blurring, this Court may consider all relevant factors, including the degree of similarity between the mark or trade name and the famous mark; the degree of inherent or acquired distinctiveness of the famous mark; the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; the degree of recognition of the famous mark; whether the user of the mark or trade name intended to create an association with the famous mark; and any actual association between the mark or trade name and the famous mark.  15 U.S.C. Section 1125(c)(2)(B).  Further, "the primary concern in blurriness actions is preventing the 'whittling away of an established trademark's selling power through its unauthorized use by others.'" Starbucks Corporation v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 105 (2nd Cir. 2009) citing Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026, 1031 (2nd Cir. 1989).

 In the present case, this Court finds the defendant is liable for dilution by blurring.  The above listed factors strongly support Lorillard's claim.  Most important, the defendant offered for sale counterfeit cigarettes with marks nearly identical to Lorillard's famous marks.  This certainly contributed to the "whittling away" of the trademarks' selling power.


**B. Dilution by Tarnishment**

Dilution by tarnishment is an association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.  15 U.S.C. Section 1125(c)(2)(C).  Specifically, a "trademark may be tarnished when it is linked to product of shoddy quality . . ." because the reputation of the mark may be

9

harmed.  Starbucks Corporation v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 105 (2nd

Cir. 2009).

In the present case, it is undisputed that Lorillard's genuine product tastes "better"

than the counterfeit in question.  Lorillard "has received reports from consumers and

retailers alike of consumers returning NEWPORT® complaining of bad taste, only to find

out that the cigarettes in question were counterfeit."  (Decl. O'Brien at ¶12).  In other

words, Lorillard's cigarettes taste like cigarettes should and non-genuine products do not.

Therefore, the defendant is liable for dilution by tarnishment.


*IV. State Law Claims.*

**A. Unfair Competition**.

Under Ohio State law, unfair competition "ordinarily consists of representations by

one person, for the purpose of deceiving the public, that his or her goods are those of

another."  Landskroner v. Landskroner, 154 Ohio App.3d 471 (Ohio Ct. App. 2003).

In the present case, there is a genuine issue of material fact concerning the

defendant's intent to deceive the public.  Therefore, this Court denies Lorillard's motion as

to this claim.

**B. Ohio Deceptive Trade Practices Act and Common Law Trademark      Infringment**.

Both the Ohio common law for trademark infringement and the ODTPA "mirror the .

. . federal claim of trademark infringement by also requiring proof of likelihood of

confusion."  Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center, 109

10

F.3d 275, 288 (6th Cir. 1997).

As stated above in the previous two sections, Lorillard has established that confusion is likely with regard to the defendant's use of Lorillard's protected marks. Therefore, it is indisputable that the defendant is liable to Lorillard under these state law claims.

## C.  Damages *and Enhanced Damages*

*I. Damages*

Pursuant to 15 U.S.C. Section 1117(c), Lorillard requests statutory damages for the defendant's violations of its trademarks.

Section 1117(c) provides:
:

> In a case involving the use of a counterfeit mark (as defined in section 1116 (d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just;
>
> or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

Assuming this Court does not find the trademark violations to be willful, Lorillard is entitled to not less than $1,000 or more than $200,000 for each trademark infringed on by the

counterfeit product the defendant offered for sale.  On an individual pack of Newports®, and the counterfeit product in question, there are eight Lorillard trademarks.  (Decl. Lindsley at ¶4; Doc. 26, Exh. A-H ).  Therefore, Lorillard is entitled to not less than $8,000 or more than $1,600,000 in statutory damages as this Court considers just.

Upon examining all relevant factors, this Court finds that Lorillard is entitled to the minimum statutory award, and therefore, the defendant is liable for $8,000.


*II. Enhanced Damages*

The question remains, however, if the defendant's conduct was willful or with a reckless disregard for Lorillard's protected marks, thereby subjecting the defendant to increased damages.

[I]n the civil context, 'willful conduct denotes intentional, knowing and voluntary acts. It may also indicate a reckless disregard for obvious or known risks.' " Thomsen v. U.S., 887 F.2d 12, 17 (1st Cir. 1989), quoting Monday v. U.S., 421 F.2d 1210, 1215 (7th Cir. 1970). The United States Supreme Court has addressed the definition of "willful" in the context of civil statutes, and has held that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." Safeco Ins. Co. of America v. Charles Burr, 127 S. Ct. 2201, 2208 (2007).  Moreover, intent to infringe can be shown by circumstantial evidence. Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1121 (6th Cir. 1996) (internal quotations and citations omitted).

In the present case, Lorillard contends that it is entitled to enhanced damages under the Lanham Act because the defendant offered counterfeit Newport® cigarettes for

12

sale willfully, or in reckless disregard of Lorillard's trademark rights. To support its

contention, Lorillard relies on Mr. Hutton's observations while visiting the Empress Market,

the five packs of counterfeit Newports® actually recovered from the defendant, and the

defendant's purportedly inadequate explanation for the presence of the counterfeit packs.

Further, Lorillard points to its warning to the defendant that there were counterfeit

products in the marketplace.  According to Lorillard, this direct and circumstantial

evidence is more than enough to show that the defendant acted with, at least, a reckless

disregard of Lorillard's trademark rights.  This Court disagrees for the following reasons.

It is a true statement that Lorillard warned the defendant about the existence of

counterfeit products in the marketplace *generally*.  However, this puts the defendant in no

different a position than if it had not received this warning.  Counterfeiting is illegal and

prevalent.  Therefore, assuming the defendant had not been warned by Lorillard and then

asserted ignorance of counterfeit cigarettes in the nationwide cigarette market, this Court

would simply have imputed constructive notice to the defendant.[2]

Lorillard also argues that the presence of counterfeit cigarettes in the Empress

Market coupled with the defendant's wholly inadequate explanation for their presence,

proves at least a reckless disregard for Lorillard's trademark rights.  This Court would, of

course, agree with this logic if the defendant's explanation were inadequate at the

summary judgment stage of these proceedings.  Construing the evidence as well as any

inferences favorably to the nonmoving party, the defendant's explanation is more than

---

[2]This analysis would change if Lorillard had detected increased counterfeiting in the
areas surrounding the Empress Market, and alerted the defendant to this activity.  Lorillard,
however, insists that it only alerted the defendant to counterfeiting in the marketplace generally.

13

adequate.  Therefore, Lorillard as the *moving* party has not met its burden of showing the absence of any genuine issues of material fact.

Abdulrahman Abdelqader, the general manager of the Empress Market, declared that Empress Market never purchased cigarettes from any source other than ADCO Distributors, Inc.  Mr. Abdelqader further stated that upon alerting ADCO of the present lawsuit, an employee from ADCO advised him that another of its customers (Downtown Check Cashing) had "bad Newport product in his store . . . [and] that it is possible that Empress Market received product that Downtown exchanged with [ADCO] on July 14th." (Doc. 28; Exh. C).  In other words, the defendant argues that ADCO may have mistakenly placed the counterfeit cigarettes in its inventory and then used them to fill an order from Empress Market.

Lorillard strongly objects to the plausibility of the above explanation.  First, Lorillard points out that the Empress Market employee responsible for purchasing cigarettes during the relevant time period has since died, and therefore the defendant cannot be sure its cigarettes came from legitimate suppliers.  Second, Lorillard argues that because its sales representative observed one carton and fifty packs (sixty packs) of counterfeit cigarettes, and ADCO only supplied the defendant with thirty packs from its potentially contaminated inventory, the defendant's explanation is insufficient.

This Court duly notes the above objections to the defendant's explanation.  They are, however, insufficient to show an absence of any genuine issues of material fact.  The fact that the defendant's former purchasing agent has died surely does not strengthen the defendant's argument, but it does not render it "mere speculation."  The fact that ADCO could have only supplied the defendant with thirty packs of counterfeit cigarettes during

14

the relevant time period, and Mr. Hutton observed sixty packs during his visit, does not render the proffered explanation implausible.  Mr. Hutton stated in his declaration and testified under oath that he observed sixty packs of counterfeit cigarettes; however, this evidence is not uncontroverted.  The defendant states repeatedly that there were not fifty or more packs of counterfeit cigarettes in its store.  And if there were fewer than fifty packs of counterfeit cigarettes, then there could have been fewer than thirty packs.  In short, the defendant's explanation is not internally inconsistent and Lorillard has not produced uncontroverted evidence to render it inconsistent.  There are genuine issues of material fact as to whether the defendant acted with a reckless disregard of Lorillard's trademark rights.  Therefore, Lorillard is not entitled to enhanced damages and wll receive statutory damages in the amount of $8,000.


**D. Permanent Injunction**

The plaintiff requests a permanent injunction pursuant to the Lanham Act, 15 U.S.C. Section 1116, in order to prevent any future violations of its trademarks.  Lorillard contends that case law strongly favors its position and notes that the "mere possibility" of future infringement has been found sufficient to warrant a permanent injunction.  This Court disagrees and will not grant a permanent injunction at this time.

Lorillard cites Vuitton Et Fils, S.A. v. Crown Handbags, 492 F.Supp. 1071 (S.D.N.Y. 1979), and Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132 (9th Cir. 1986), to support its request for a permanent injunction.  In both of these cases, the courts issued a permanent injunction primarily because the defendants had willfully violated the plaintiffs'

15

trademarks.  Indeed, this willful infringement constituted sufficient evidence that the

plaintiffs would infringe again in the future.  In the present case, however, there is still a

genuine issue of material fact as to whether the defendant willfully violated Lorillard's

trademarks.  The defendant's position is that ADCO mistakenly filled the market's

inventory with counterfeit cigarettes.

The Supreme Court of the United States stated in William R. Warner & Co. v. Eli

Lilly & Co., 265 U.S. 526, 532 (1924):

> [A] trademark plaintiff entitled to relief, is entitled to effective
> relief; and any doubt in respect of the extent thereof must be
> resolved in its favor as the innocent producer and against the
> [defendant], which has shown by its conduct that it is not to be
> trusted.

However, the defendant in this case has not shown by its conduct that it is not to be

trusted.  As this Court has repeated numerous times, there is a dispute over this very

issue.  The plaintiff's position is not uncontroverted, and the defendant's position is neither

unbelievable as a matter of law nor logically impossible. Therefore, Lorillard's request for

a permanent injunction is denied at this time.

**E. Attorney's Fees**

The plaintiff requests an award of attorney's fees and costs.

In 1975, Congress supplemented the Lanham Act with the following authority: "The

court in exceptional cases may award reasonable attorney fees to the prevailing party."

15 U.S.C. Section 1117.  A statement issued by the Department of Commerce and

accompanying the Senate report on this amendment, explained what may constitute an

16

exceptional case:

> Trademark and unfair competition cases brought under the
> Trademark Act of 1946 . . . present a particularly compelling need for
> attorney's fees . . . Deliberate and flagrant infringement of trademarks
> should particularly be discouraged in view of the public interest in the
> integrity of marks as a measure of quality of products. Effective
> enforcement of trademark rights is left to the trademark owners and
> they should, in the interest of preventing purchaser confusion, be
> encouraged to enforce trademark rights. It would be unconscionable
> not to provide a complete relief including attorney's fees . . .

Vuitton Et Fils, S.A. v. Crown Handbags, 492 F.Supp. 1071 (S.D.N.Y. 1979).

Further, federal courts have found a case to be exceptional where the defendant's

infringement was willful, malicious, fraudulent, or deliberate.  Securacomm Consulting,

Inc. V. Securacom, Inc., 224 F.3d 273, 281 (3rd Cir. 2000).  Therefore, because this Court

has found there to be a genuine issue of material fact as to willfullness and because there

are no other reasons to classify this case as exceptional, plaintiff's request for attorney's

fees is denied at this time.


**Conclusion**

For the reasons set forth above, this Court grants the plaintiff's Motion in part and

denies it in part.

Specifically, this Court grants summary judgment on the plaintiff's trademark

infringement claim under 15 U.S.C. Section 1114(1), false designations of origin claim

under 15 U.S.C. Section 1125(a), trademark dilution claims under 15 U.S.C. Section

1125©, trademark infringement claim under Ohio common law, and Ohio Deceptive Trade

Practices Act claim under O.R.C. Section 4165.02.  The Court denies summary judgment

on the plaintiff's common law unfair competition claim and Lorillard's request for enhanced statutory damages, attorney's fees, and a permanent injunction.  Finally, the defendant is liable to and shall pay Lorillard $8,000 in statutory damages pursuant to 15 U.S.C. Section 1117(c).


IT IS SO ORDERED.


                                         /s/Lesley Wells_____
                                         UNITED STATES DISTRICT JUDGE